

**SO ORDERED.**

**SIGNED this 10 day of January, 2013.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| THE WILLOWS II, LLC | 12-02876-8-SWH |
| DEBTOR | |
| | |
| THE WILLOWS II, LLC | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | 12-00086-8-SWH |
| BRANCH BANKING AND TRUST COMPANY, | |
| Defendant. | |

### ORDER GRANTING SUMMARY JUDGMENT

The matter before the court is the motion for summary judgment filed by Branch Banking and Trust Company ("BB&T"). A hearing on this matter was conducted in Raleigh, North Carolina, on October 16, 2012. For the reasons that follow, BB&T's motion will be granted.

### JURISDICTION

The court has subject-matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District

Court for the Eastern District of North Carolina dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## BACKGROUND

On September 8, 2005 the debtor executed a deed of trust ("Deed of Trust") in favor of Coastal Federal Bank. The Deed of Trust provides in part that it secures "(A) payment of the Indebtedness and (B) performance of any and all obligations under the Note, the Related Documents, and this Deed of Trust." The collateral described within the Deed of Trust consists of real estate located in Brunswick County, North Carolina.

The Deed of Trust contains a definitional section in which the term "Indebtedness" is defined as "all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the Note or Related Documents." The term "Note" is defined as "the promissory note dated September 7, 2005, in the original principal amount of $675,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, consolidations of, and substitutions for the promissory note or agreement." Finally, the term "Related Documents" is defined within this section as "all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness."

The Deed of Trust also has a section titled "Future Advances." It provides in part that the "Indebtedness secured by this Deed of Trust is for present and future obligations and this Deed of Trust is given to secure all present and future obligations of Grantor to Beneficiary." It then recites

the language necessary to comply with N.C. Gen. Stat. § 45-68, such as setting out $675,000.00 as the maximum principal amount to be secured by the Deed of Trust at any one time.

Although the Deed of Trust references a promissory note dated September 7, 2005, the note attached to BB&T's proof of claim is dated September 8, 2005 ("the Note"). The Note also provides that the actual loan date was in fact September 8, 2005. BB&T has failed to produce any note dated September 7, 2005, and the debtor asserts that it is unaware of any note executed on that date.

The Deed of Trust contains other relevant information regarding the Indebtedness. The loan numbers referenced on the Deed of Trust and Note are identical, with each providing that the loan number is 3330059186. They both refer to, and incorporate, a commitment letter described as "Commitment Letter No. 354/05 dated July 19, 2005." Both documents reference an original principal balance of $675,000.00 and they each identify the debtor as the borrower and Coastal Federal Bank as the lender.[1] Finally, the Deed of Trust specifically refers to a note with a variable interest rate; the Note has a variable interest rate.

On September 28, 2006, the debtor entered into a Change in Terms Agreement that extended the maturity date of the Note to March 8, 2007. The Change in Terms Agreement refers to the same parties, original principal balance and loan number as the Note, and unlike the Deed of Trust, it refers to the correct date of the Note, i.e. September 8, 2005. It also describes the collateral secured by the Note as a "Deed of Trust Securing Future Advances dated September 8, 2005 given by The Willows II, LLC to Lender [Coastal Federal Bank] recorded on September 9, 2005 in the records of the Brunswick County, North Carolina, in Register of Deeds Book 2233 Page 747. . . ."

---

[1] The Deed of Trust defines the term "Lender" as "Coastal Federal Bank, its successors and assigns." BB&T is the successor to Coastal Federal Bank as the surviving entity of a merger between BB&T and Coastal Federal Bank that became effective on August 17, 2007.

3

The parties have stipulated to the following facts: (1) the Deed of Trust was recorded on September 9, 2005 in the Office of the Register of Deeds of Brunswick County in Book 2233 at Page 747; (2) it is indexed under the debtor's correct legal name; and (3) a search of the Brunswick County real estate records under the debtor's name as grantor returns four documents, one of which is the Deed of Trust. The debtor represented to the court, and BB&T has not disputed, that the Note and the Change in Terms Agreement are not recorded.

The debtor filed for relief under chapter 11 of the Bankruptcy Code on April 13, 2012 and is currently operating as a debtor-in-possession pursuant to 11 U.S.C. § 1107(a). BB&T filed a proof of claim on May 11, 2012, asserting a secured claim in the amount of $603,648.74. It attached, among other documents, the Note and Deed of Trust to support its claim. On May 8, 2012, the debtor filed an adversary proceeding against BB&T contesting the secured status of the bank's claim. The debtor specifically argues that the Deed of Trust is invalid and unenforceable because it refers to a note dated September 7, 2005 when in fact no note of that date exists.

After filing an answer to the complaint on June 8, 2012, BB&T moved for summary judgment on three alternative grounds. First, the Note is secured by the Deed of Trust because it is covered by the Deed of Trust's future advance clause. Second, the Deed of Trust properly identifies the Note, even though the two documents contain different dates, because they reference the same parties, original principal balance and loan number. Finally, principals of estoppel bar the debtor from contesting the validity of the Deed of Trust.

## DISCUSSION

Pursuant to the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. A material fact is one that "would constitute or would irrevocably establish any material element of a claim or defense." Prior v. Pruett, 550 S.E.2d 166, 170 (N.C. App. 2001) (citations omitted). In evaluating the parties arguments on a summary judgment motion, "the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962). "[T]he plain language of [the Rule] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There being no disputed material fact, the matter is ripe for summary judgment for either BB&T or the debtor. Fed. R. Bankr. P. 7056(f).

**I.   Estoppel**

The court will first determine whether the debtor is estopped from contesting the validity of the Deed of Trust. BB&T contends that the debtor, when executing the Change in Terms Agreement, explicitly agreed that the Note was in fact the obligation secured by the Deed of Trust. By acknowledging the Deed of Trust's validity in the Change in Terms Agreement, BB&T argues that the debtor is now estopped from contesting its enforceability in bankruptcy in defense of a strong-arm action.

A debtor-in-possession is empowered under Section 544(a) of the Bankruptcy Code to avoid transfers of property made, or obligations incurred, by the debtor that would be voidable by certain creditors or a bona fide purchaser of real property. 11 U.S.C. § 544(a)(1)-(3). In the Fourth Circuit, the knowledge of the debtor is imputed to the debtor-in-possession who is proceeding as a bona fide

5

purchaser under Section 544(a)(3). See In re Hartman Paving, Inc., 745 F.2d 307, 309 (4th Cir. 1984); In re Law Developers, LLC, 404 B.R. 136, 139 (Bankr. E.D.N.C. 2008). In contrast to Section 544(a)(3), however, the knowledge of the debtor is not imputed to the debtor-in-possession proceeding under Section 544(a)(1) as a hypothetical judgment lien creditor. In re Law Developers, 404 B.R. at 140; In re Millerburg, 61 B.R. 125, 128 (Bankr. E.D.N.C. 1986).

Assuming, without deciding, that the debtor acknowledged the validity of the Deed of Trust in the Change in Terms Agreement, such an acknowledgment is not imputed to the debtor-in-possession as a hypothetical judgment lien creditor under Section 544(a)(1). If the Change in Terms Agreement appeared in the public record, BB&T's estoppel argument may have prevailed. See Easthaven Marina Grp., LLC v. B&M Holdings, LLC (In re Easthaven Marina Grp., LLC), 2009 Bankr. LEXIS 658, at *9, 2009 WL 703383, at *3 (Bankr. E.D.N.C. Mar. 13, 2009) (finding that a debtor-in-possession was estopped from attacking the validity of a deed of trust under Section 544(a)(1) when agreements in which the debtor assumed the mortgage appeared in the public record). However, the Change in Terms Agreement does not appear in the public record, and accordingly, the debtor is not estopped from seeking to invalidate the Deed of Trust as a hypothetical judgment lien creditor.

## II.    Proper Identification of the Underlying Obligation

"Once the [debtor-in-possession] has assumed the status of a hypothetical lien creditor under Section 544(a)(1), state law is used to determine what the lien creditor's priorities and rights are." In re Law Developers, 404 B.R. at 139-40. Under North Carolina law, a "mortgage which purports to secure the payment of a debt has no validity if the debt has no existence." Bradham v. Robinson, 236 N.C. 589, 594, 73 S.E.2d 555, 558 (1952); Walston v. Twiford, 248 N.C. 691, 693, 105 S.E.2d

62, 64 (1958). A deed of trust must therefore "identify the obligation secured" to be valid. Walston, 248 N.C. at 693, 105 S.E.2d at 64; see also In re Enderle, 110 N.C. App. 773, 775, 431 S.E.2d 549, 550 (1993) (stating that a deed of trust must "properly identify the obligation secured"); In re Hall, 708 S.E.2d 174, 177 (2011) (stating that a deed of trust must "specifically identify the obligation it secures").

While the rule itself is easily stated, its application tends to be slightly more complicated. Under what circumstances does a deed of trust fail to "properly" or "specifically" identify the secured obligation? North Carolina state and bankruptcy courts have addressed this issue on numerous occasions. See Walston, 248 N.C. at 691-93, 105 S.E.2d at 62-64; Allen v. Stainback, 186 N.C. 75, 77, 118 S.E. 903, 904 (1923); Harper v. Edwards, 115 N.C. 246, 246-48, 20 S.E. 392, 392-93 (1894); In re Bright's Creek Lot 71, LLC, 2012 N.C. App. LEXIS 1175, at *6-8, 2012 WL 4892868, at *3 (Oct. 16, 2012); In re Hall, 708 S.E.2d at 177; Putnam v. Ferguson, 130 N.C. App. 95, 97-98, 502 S.E.2d 386, 388 (1998); Enderle, 110 N.C. App. at 774-75, 431 S.E.2d at 549-50; Tobacco Square LLC v. Putnam County Bank (In re Tobacco Square LLC), 2012 Bankr. LEXIS 5177, at *8-9, 2012 WL 5305806, at *3 (Bankr. M.D.N.C. Oct. 26, 2012); Beckhart v. Nationwide Trustee Serv. Inc. (In re Beckhart), 2011 Bankr. LEXIS 4622, at *6-21, 2011 WL 5902598, at *2-7 (Bankr. E.D.N.C. July 21, 2011), aff'd, Beckhart v. Nationwide Tr. Serv. Inc., 2012 U.S. Dist. LEXIS 120132, 2012 WL 3648105, at *3-9 (E.D.N.C. Aug. 21, 2012); Oliver v. Smith (In re Willams), 2010 Bankr. LEXIS 1272, at *5-10, 2010 WL 1440892, at *3 (Bankr. E.D.N.C. Apr. 9, 2010); Easthaven Marina, 2009 Bankr. LEXIS 658, at *4-10, 2009 WL 703383, at *2-4; Den-Mark Constr., Inc. v. Wachovia Bank N.A. (In re Den-Mark Const., Inc.), 398 B.R.

842, 851-56 (Bankr. E.D.N.C. 2008); Beaman v. Head (In re Head Grading Co.), 353 B.R.122, 123-24 (Bankr. E.D.N.C. 2006).

Out of these cases, the court is aware of only two North Carolina state court decisions to hold that a deed of trust did *not* properly identify the obligation secured. Ferguson, 130 N.C. App. at 97-98, 502 S.E.2d at 388; Enderle, 110 N.C. App. at 774-75, 431 S.E.2d at 549-50. The holdings in Ferguson and Enderle establish that a deed of trust does not properly identify the obligation secured when the obligor on the note recited in the deed of trust and the obligor on the note produced by the creditor are different, *and the deed of trust contains no reference that it secures the debt of the obligor who executed the note produced*. Ferguson, 130 N.C. App. at 97-98, 502 S.E.2d at 388; Enderle, 110 N.C. App. at 774-75, 431 S.E.2d at 549-50. As emphasized, both deeds of trust in Ferguson and Enderle apparently failed to contain any information indicating that they secured the debt owed by the persons named on the note produced by the creditor. Enderle, 110 N.C. App. at 775, 431 S.E.2d at 550 ("There is *no reference in the deed of trust* to indicate that it is security for a debt of the Tants [the persons owing on the note produced].") (emphasis added); Ferguson, 130 N.C. App. at 97, 502 S.E.2d at 388 (providing that the deed of trust *made no reference* to the note produced and that there was no evidence to show that the obligor referenced in the deed of trust was actually indebted to the creditor).

Whereas Ferguson and Enderle dealt with inconsistent obligors, the issue before this court is whether the Deed of Trust that in many ways accurately refers to the Note produced by BB&T is nevertheless invalid because the two documents contain different dates. The court is unaware of any North Carolina state court decision to address this issue. Rather, the sole case to do so, to the court's knowledge, is Head Grading. 353 B.R. at 123-24; but see Easthaven Marina, 2009 Bankr.

8

LEXIS 658, at *4-6, 2009 WL 703383, at *2 (invalidating a deed of trust that was both misdated and misnamed, but making clear that it was not deciding that "the discrepancy of one day in date" is fatal to the validity of a deed of trust).  In Head Grading, the court concluded that a deed of trust was invalid when it purported to secure a note executed on July 28, 1998 and the only note produced was executed one day later on July 29, 1998.  353 B.R. at 123-24.  In deciding that the deed of trust did not properly identify the note it intended to secure, the court reasoned that "the clarity and certainty in lien perfection requirements would be lost if the court were to allow exceptions to the general rule created by North Carolina courts regarding the specificity with which the obligation secured by a deed of trust must be identified."  Id. at 124.

The ruling in Head Grading has been clarified by subsequent decisions.  See Beckhart, 2011 Bankr. LEXIS 4622, at *6-21, 2011 WL 5902598, at *3-5; Willams, 2010 Bankr. LEXIS 1272, at *5-10, 2010 WL 1440892, at *3; Den-Mark Const., Inc., 398 B.R. 842, 854-55.  In Beckhart, the court upheld the validity of a deed of trust that did not provide the date of the note it purported to secure when the note produced was also undated.  2011 Bankr. LEXIS 4622, at *13, 2011 WL 5902598, at *7, aff'd, Beckhart v. Nationwide Tr. Serv. Inc., 2012 U.S. Dist. LEXIS 120132, 2012 WL 3648105, at *10.  In doing so, the court distinguished Head Grading in the following way:

> Since the parties to the note and the deed of trust were related by blood kinship in Head Grading, it would not be uncommon for several notes of different dates to exist among family members. . . . Being able to identify the appropriate underlying obligation might be more difficult in the familial situation as there could be multiple obligations between the parties.  However, as in the Debtors' transaction, identifying the underlying obligation between a commercial lender and a residential homeowner borrower may not be as difficult since it would be uncommon for more than one note and/or deed of trust to exist between the parties.

9

2011 Bankr. LEXIS 4622, at *12-13 n.3, 2011 WL 5902598, at *4 n.3. The court then explained what it believed to be the proper approach to determining whether a deed of trust properly identifies the secured obligation:

> There are no specific requirements as to what information must be provided to properly identify an underlying obligation. The Court declines to establish a bright line rule that in order to specifically identify the debt referenced herein a lender must provide a date of the underlying obligation in a deed of trust . . . . Instead, the Court should look at the language of the documents and the facts of each case to determine if the information provided sufficiently describes the underlying obligation. . . . Although the inclusion of a contradictory date of the underlying obligation may invalidate a deed of trust as in Head Grading, the omission of such date, in this case, does not invalidate the lien created by a properly recorded deed of trust.

Beckhart, 2011 Bankr. LEXIS 4622, at *14-15, 2011 WL 5902598, at *4-5.

Applying similar reasoning, the district court affirmed the bankruptcy court's decision, stating that:

> North Carolina law does not require a deed of trust to use any particular piece of information to identify the underlying debt. . . . [M]erely because the Deed of Trust fails to reference the date of the Promissory Note does not per se invalidate the Deed of Trust. . . . Rather, the court focuses on whether the identifying information contained in the deed of trust (whatever that information may be) specifically identifies the underlying debt and is consistent with the underlying debt.

Beckhart, 2012 U.S. Dist. LEXIS 120132, at *12-13, 2012 WL 3648105, at *4. Thus, both courts in Beckhart drew a distinction between deeds of trust that are consistent with the underlying debt instrument and those that contain inconsistencies with the underlying debt instrument, with the latter more likely to be invalid than the former.

Relying on this distinction, the debtor in the instant case argues that a note's date of execution is a "material" term, and because the date referenced in the Deed of Trust differs from the

10

date of the Note, the Deed of Trust is necessarily invalid.  The debtor is ultimately urging the court to adopt a bright-line rule that would render invalid every deed of trust that references a note with a date different from the date of the note actually produced, regardless of the existence of any other identifying information.  Although the Beckhart decisions make clear that an inconsistency between the documents could be fatal to the deed's validity, both the bankruptcy court and the district court left open the possibility that a deed of trust may properly identify the underlying obligation despite a discrepancy between dates.  Beckhart, 2011 Bankr. LEXIS 4622, at *14-15, 2011 WL 5902598, at *5 ("[T]he inclusion of a contradictory date of the underlying obligation *may* invalidate a deed of trust.") (emphasis added); 2012 U.S. Dist. LEXIS 120132, at *13, 2012 WL 3648105, at *4 (stating that if the deed of trust referenced a specific date, when the underlying note was undated, the deed of trust "*may* have been invalid") (emphasis added).

Rather than create such a rigid rule as advocated by the debtor, the court will instead assess the validity of the Deed of Trust by turning to several North Carolina Supreme Court decisions that help explain the requirement that **a mortgage must identify the obligation secured**.  Such manner of assessment is consistent with the fact-specific approach advocated in Beckhart, i.e. that courts "look at the language of the documents and the facts of each case to determine if the information provided sufficiently describes the underlying obligation." 2011 Bankr. LEXIS 4622, at *14-15, 2011 WL 5902598, at *4-5.

Courts addressing whether a deed of trust properly identifies the obligation secured often cite Walston v. Twiford.  248 N.C. 691, 105 S.E.2d 62 (1958).  See, e.g., In re Bright's Creek Lot 71, 2012 N.C. App. LEXIS 1175, at *6, 2012 WL 4892868, at *3; Ferguson, 130 N.C. App. at 97, 502 S.E.2d at 388; Enderle, 110 N.C. App. at 775, 431 S.E.2d at 550; Beckhart, 2012 U.S. Dist. LEXIS

11

120132, at *9, 2012 WL 3648105, at *3; Head Grading, 353 B.R. at 123.  In Walston, the Court stated, "[s]ince by definition a mortgage is a conveyance of property to secure the obligation of the mortgagor, it is necessary for the mortgage to identify the obligation secured." 248 N.C. at 693. The Court held that the deed of trust in that case did so because it "adequately describe[d] the obligation of the grantors" and there was "no intimation or suggestion that the note recited in the deed of trust was in any way at variance with the terms of the obligation as set out in the deed of trust." Id.  Outside of these statements, however, the Walston decision does not provide much insight into the requirement that a mortgage identify the obligation secured.[2]

The Walston court did, however, cite to two of its prior decisions, among others, that help explain why it is necessary for a mortgage to identify the obligation secured.  248 N.C. at 693; see Harper v. Edwards,115 N.C. 246, 20 S.E. 392 (1894); Belton v. Bank, 186 N.C. 614, 120 S.E. 220 (1923).  In Harper, the issue was whether a mortgage was "void for uncertainty" because it omitted the amount owed on the note that was secured by the mortgage.  115 N.C. at 246, 20 S.E. at 247. In acknowledging this issue as one of first impression, the Court adopted the following rule which, according to the Court, was "universally recognized" at that time:

> Literal exactness in describing the indebtedness is not required.  It is sufficient if the description be correct so far as it goes, and full enough to direct attention to the sources of correct and full information in regard to it, and the language used is not liable to deceive or mislead as to the nature or amount of it.

---

[2]It is apparent that the deed's description of the underlying debt in Walston was not a significant issue in the case.  In fact, the bulk of the opinion was devoted to an entirely separate issue thought to be dispositive of the case, i.e.. whether a provision in the deed of trust terminated the mortgagors' liability upon the death of the original mortgagee.  Id. at 693-94.

12

Id. (citing 1 Jones on Mortgages, § 70). The Court held that the mortgage was not void because "a reference in a mortgage to a note secured by it, without specifying its contents, is sufficient to put subsequent purchasers upon inquiry, and to charge them with notice." Id. It then wrote how it felt compelled to adopt this rule as the law in North Carolina, even though such a rule could potentially allow for the "fraudulent substitution" of "fictitious debts," because it was "so often in business impracticable to state the exact amount to be secured." Id. at 247-48.

In Belton, the defendant was the holder of both a note executed by the plaintiff in the amount of $200 and the deed of trust securing the note. 186 N.C. at 614, 120 S.E. at 220. The plaintiff also owed $3,593.33 to the defendant, a debt that was not secured by the deed of trust. Id. at 615. The plaintiff and defendant then executed a renewal note that contained language which the defendant argued authorized it to secure the $3,593.33 obligation with the original deed of trust. Id. The plaintiff ultimately paid down the $200 owing on the original note, but the defendant claimed that the renewal note allowed it to hold the deed of trust as security for the other $3,593.33. Id. In rejecting the defendant's argument, the Court stated that "[a]n agreement to secure one or more obligations must be confined to those intended to be secured by the parties to the contract, for nothing not within the contemplation of the parties will be included in any such agreement," and "we are sure the minds of the parties never met on the proposition that the land conveyed in the deed of trust should stand as security for the payment of any debt other than the debt originally due [the $200] . . . ." Id.

The decisions in Walston, Harper and Belton, when considered together, explain the rationale for requiring a mortgage to identify the obligation secured. First, as provided in Harper, the mortgage must be "sufficient to put subsequent purchasers upon inquiry and to charge them with

notice." This entails a determination as to whether the mortgage language would in any way "deceive or mislead" those examining the record as to "the nature or amount of" the obligation secured by the mortgage. Second, the mortgage must also be confined to the obligations intended to be secured by the parties to the mortgage agreement. These two underlying requirements should be taken into consideration when deciding whether a mortgage properly identifies the obligation secured. Finally, as demonstrated by the Court in Harper, concerns for the possibility of "fraudulent substitution" of "fictitious debts" should also influence the analysis.

Based on these considerations, the court concludes that the Deed of Trust contains sufficient information that specifically and uniquely identify the Note as the obligation secured. It therefore "properly identifies the obligation secured" despite its incorrect reference to a note executed on September 8, 2005.

To explain, the Deed of Trust is sufficient to put subsequent purchasers and creditors on notice of the nature and amount of the obligation secured. As stipulated by the parties, the Deed of Trust is properly recorded and shows up in a search of the Brunswick County real estate records. It correctly provides subsequent purchasers and lenders with the amount of the obligation, the fact that the obligation contains a variable interest rate, the borrower, the lender, the loan number, the commitment letter associated with the loan, the property serving as collateral, the grantor, the grantee, the beneficiary of the Deed of Trust, and the fact that future advances of up to $675,000.00 may be secured by the collateral. With this information provided in the Deed of Trust, no subsequent purchasers or lenders could genuinely claim that they had been deceived or misled as to the nature or amount of the secured obligation. Accordingly, the incorrect reference to a note

executed on September 8, 2005 does not threaten the "clarity and certainty in lien perfection requirements" established by North Carolina courts, a concern of the court in Head Grading.

The Deed of Trust's description of the obligation it purports to secure is also sufficient and accurate enough to conclude that the Note is the actual obligation that the parties intended to be secured by the collateral. Whereas the deeds of trust in Ferguson and Enderle failed to contain *any references* indicating that they secured the debt owed by the persons who executed the note that was produced, the Deed of Trust contains numerous references that identify the Note as the obligation secured. Importantly, the Deed of Trust directly identifies the Note's loan number, the parties to the Note and the amount owed on the Note. It also indirectly identifies the Note by, for example, referencing the commitment letter associated with the Note as well as referencing a note with a variable interest rate. See Beckhart, 2012 U.S. Dist. LEXIS 120132, at *28-29, 2012 WL 3648105, at *9 (distinguishing between direct and indirect identifying information). Finally, the discrepancy between the dates is of only one day. This suggests that the inaccurate date referenced in the Deed of Trust was simply an error, whereas a significantly larger discrepancy is more likely to suggest that the note produced may not have actually been the obligation intended to be secured.

The information that accurately identifies the Note as the obligation intended by the parties to be secured is also of the type that tends to protect against the possibility of "fraudulent substitution" of "fictitious debts." Information on a deed of trust may at times be so inconsistent with the note produced that concerns over fraud would necessitate a finding that the deed of trust does not properly identify the underlying obligation. Likewise, a discrepancy of even one day in date, such as the case in Head Grading, may render the deed of trust invalid if it does not contain enough information specifically identifying the underlying note. However, the amount and

specificity of information contained within this Deed of Trust that accurately references the Note provides the court with a sufficient basis to conclude that the Note is the obligation intended to be secured by the parties, even though it incorrectly references a note executed one day prior to the date of the Note.

Because the court concludes that the Deed of Trust properly identifies the Note as the obligation secured, it is unnecessary to address BB&T's alternative argument that the Deed of Trust's future advance clause encompasses the Note. The Deed of Trust is valid and thus the debtor-in-possession as a hypothetical judicial lien creditor cannot avoid BB&T's security interest as a matter of law. BB&T's motion for summary judgment is **GRANTED**.

**SO ORDERED.**

**END OF DOCUMENT**